Filed by      D.C.
ELECTRONIC

**AUG 01, 2013**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

August 01, 2013

For rules and forms visit
www.ca11.uscourts.gov

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  13-12291-BB
Case Style: Geoffrey Scimone, et al v. CCL, et al
District Court Docket No: 1:12-cv-23505-WPD

The enclosed judgment is hereby issued as the mandate of this court.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

Sincerely,

JOHN LEY, Clerk of Court

Reply to:  Carol Lewis/jsc
Phone #:  (404) 335-6179

Enclosure(s)

MDT-1 Letter Issuing Mandate

**UNITED STATES COURT OF APPEALS**
**For the Eleventh Circuit**

_____

No. 13-12291

_____

District Court Docket No.
1:12-cv-23505-WPD

GEOFFREY SCIMONE,
NANCY SCIMONE,
MARIO LOFARO,
NANCY LOFARO,
AGATINA VINCENZA MARFISI, et al.,

Plaintiffs - Appellees,

versus

CARNIVAL CORPORATION,
CARNIVAL CORPORATION & PLC,
COSTA CRUISE LINES, INC.,
COSTA CROCIERE S.P.A.,
JOSEPH FARCUS, ARCHITECT, P.A.,

Defendants - Appellants,

JOHN DOES, et al.,

Defendants.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: July 01, 2013
For the Court: John Ley, Clerk of Court
By: Jeff R. Patch

Issued as Mandate:
August 1, 2013

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12291
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-23505-WPD

GEOFFREY SCIMONE,
NANCY SCIMONE,
MARIO LOFARO,
NANCY LOFARO,
AGATINA VINCENZA MARFISI, et al.,

Plaintiffs - Appellees,

versus

CARNIVAL CORPORATION,
CARNIVAL CORPORATION & PLC,
COSTA CRUISE LINES, INC.,
COSTA CROCIERE S.P.A.,
JOSEPH FARCUS, ARCHITECT, P.A.,

Defendants - Appellants,

JOHN DOES, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 1, 2013)

Before CARNES, HULL and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

 In 2012, one of Appellants' cruise ships, the <u>Costa Concordia</u>, ran aground off the coast of Italy. In the wake of the accident, many of the <u>Costa Concordia</u>'s passengers sued Appellants (collectively referred to in this opinion as "Carnival"), filing dozens of actions in forums both in the United States and around the world. This appeal concerns two separate actions in particular, filed by groups of fifty-six and forty-eight plaintiffs in the Circuit Court of the Eleventh Judicial Circuit of Florida. Carnival removed both actions to the United States District Court for the Southern District of Florida, claiming that the district court had subject-matter jurisdiction under the mass-action provision of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). Both groups of plaintiffs moved for remand to the state court on the ground that the district court lacked jurisdiction, and the district court granted plaintiffs' motions in February 2013.

2

We granted Carnival permission to appeal in order to resolve an issue of first impression in this Circuit: whether a defendant has the right, pursuant to 28 U.S.C. §§ 1332(d)(11), 1441, and 1453, to remove multiple and separate lawsuits to federal court as mass actions if the lawsuits in the aggregate contain 100 or more plaintiffs whose claims revolve around common questions of law or fact, but neither the plaintiffs nor the state court have proposed that 100 or more persons' claims be tried jointly. Under the plain language of CAFA and § 1332(d)(11), the district court lacked subject-matter jurisdiction over the plaintiffs' two separate actions unless they proposed to try 100 or more persons' claims jointly. Consequently, the cases were improvidently removed and should have been remanded, and we affirm the district court's order.

## I.

This case begins with a shipwreck. The plaintiffs were all passengers on the Costa Concordia, a large cruise ship owned and operated by Carnival and its related corporate entities. On January 13, 2012, the Costa Concordia left Port Civitavecchia, Italy, to embark on a Mediterranean cruise. The ship's captain apparently decided to execute a maneuver known as a "bow" or "sail-by-salute," which would bring the ship close to a nearby island. Disaster struck: the ship got too close, hit an underwater rock, and began listing to one side, eventually necessitating a complete evacuation. Thirty-two people died in the accident.

3

Unsurprisingly, these events spawned many lawsuits. Less than two weeks after the accident, six plaintiffs, including Appellee Scimone, filed a complaint ("Scimone I") against Carnival and related corporate entities in the Circuit Court of the Eleventh Judicial Circuit of Florida, alleging claims for negligence, professional negligence on the part of the ship's architect, and intentional torts. Additional potential plaintiffs, who had traveled on the Costa Concordia, asked to join the suit, and the Scimone I plaintiffs soon amended their complaint to name thirty-nine plaintiffs in total.  In the ensuing weeks, yet another sixty-five Costa Concordia passengers indicated their desire to join the Scimone I action. Rather than adding these potential plaintiffs to the complaint, which would bring the total number of persons whose claims would be tried jointly over 100, the Scimone I plaintiffs voluntarily dismissed their complaint.

The original thirty-nine plaintiffs from Scimone I divided themselves into two groups and distributed the additional sixty-five Costa Concordia passengers between those two groups. In July 2012, the two groups filed two separate complaints in state court, each of which named less than 100 plaintiffs. One complaint ("Scimone II") ended up containing forty-eight plaintiffs, while the other complaint ("Abeid-Saba") contained the remaining fifty-six plaintiffs.  The two complaints contain essentially the same allegations against Carnival, and there

4

is no question that all 104 plaintiffs' claims concern common questions of law and fact.

The two groups of plaintiffs served their complaints on defendants in late August or early September 2012. Neither group of plaintiffs moved for consolidation of the two cases in state court.  Nonetheless, on September 26, 2012, Carnival removed both Scimone II and Abeid-Saba to the United States District Court for the Southern District of Florida.  Carnival argued for removal based on the mass-action provision of the Class Action Fairness Act and based on federal courts' exclusive jurisdiction over cases raising "substantial issues of federal common law relating to foreign relations."

Subsequently, Carnival filed two motions to dismiss each case, based on the forum selection clause of plaintiffs' contracts and forum non conveniens.  In turn, both groups of plaintiffs filed motions to remand their actions to state court pursuant to 28 U.S.C. § 1447.  As for CAFA's mass-action jurisdiction, the plaintiffs argued that "federal jurisdiction does not exist under the 'mass action' provision of CAFA, where the action was brought on behalf of . . . less than . . . the number required for removal under CAFA's definition of a 'mass action,'" and where "Plaintiffs have not and do not propose that this case be tried jointly with any other separate court action."  The plaintiffs also contended that the case did not implicate foreign relations, rendering removal on that ground improvident as well.

After briefing on the plaintiffs' motions to remand was complete, the district court granted both the <u>Scimone II</u> and <u>Abeid-Saba</u> plaintiffs' motions and remanded both cases to state court.  The district court concluded that defendants could not remove pursuant to the mass-action provision of CAFA: "The problem for removal jurisdiction under the CAFA is that neither suit has 100 plaintiffs alone. It is also a problem that the Plaintiffs have not proposed for the cases to be tried jointly. Therefore, the CAFA does not supply a basis for removing these two identical lawsuits."  The district court also rejected Carnival's assertion that the case implicated federal common law regarding foreign policy.  The district court therefore remanded both cases and denied all pending motions -- including Carnival's motions to dismiss -- as moot.

Pursuant to 28 U.S.C. § 1453(c)(1), Carnival petitioned for permission to appeal the district court's remand orders. We granted Carnival's petition on May 21, 2013.

## II.

We review an issue of statutory interpretation <u>de novo</u>. <u>United States v. Murrell</u>, 368 F.3d 1283, 1285 (11th Cir. 2004). We also review a district court's decision to remand a case to state court for lack of subject-matter jurisdiction <u>de novo</u>. <u>Lowery v. Ala. Power Co.</u>, 483 F.3d 1184, 1193 (11th Cir. 2007); <u>see</u> 28 U.S.C. § 1453(c)(1) (granting us jurisdiction to hear an appeal from a district

court's grant or denial of a motion to remand a class action, notwithstanding 28

U.S.C. § 1447(d)'s general proscription on appellate review of a remand order).

According to Carnival, the district court erred in concluding that it lacked

subject-matter jurisdiction over the two lawsuits pursuant to the mass-action

provision of the Class Action Fairness Act, as codified at 28 U.S.C. § 1332(d)(11).

The district court, however, got it right; Carnival had no right to remove these two

actions pursuant to 28 U.S.C. §§ 1332(d)(11), 1441, and 1453.

The relevant portion of CAFA permits removal of a "mass action" as if it

were a class action removable under § 1332(d), provided that the mass action

satisfies the following conditions:

> (i) . . . [T]he term "mass action" means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

> (ii) . . . [T]he term "mass action" shall not include any civil action in which --

>> (I) all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

>> (II) the claims are joined upon motion of a defendant;

>> (III) all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or

members of a purported class) pursuant to a State statute specifically authorizing such action; or

(IV) the claims have been consolidated or coordinated solely for pretrial proceedings.

28 U.S.C. § 1332(d)(11)(B).

The definition of "mass action" contains several requirements that are not in dispute in this case. Both parties agree that the plaintiffs' claims involve common questions of law or fact -- they all arise out of the same accident -- and that at least some plaintiffs' claimed damages exceed the amount-in-controversy requirement of 28 U.S.C. § 1332(a). The parties contest only whether the numerosity requirement has been satisfied. In the underlying state-court proceedings, the plaintiffs filed two separate cases, each of which contained less than 100 plaintiffs and, therefore, could not satisfy § 1332(d)(11)(B)(i)'s numerosity requirement standing alone. Carnival nevertheless removed both cases to the United States District Court for the Southern District of Florida.  However, unless the two cases were "proposed to be tried jointly" prior to removal, CAFA barred it from doing so.

"[T]he starting point for interpreting" what constitutes a proposal for a joint trial, and who may make such a proposal pursuant to § 1332(d)(11)(B)(i), "is the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). The key language in the statute defines a mass

8

action as a civil action in which "claims of 100 or more persons <u>are proposed to be</u>
<u>tried jointly</u>." 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). "Propose" means
"to form or declare a plan or intention" or "to offer for consideration, discussion,
acceptance, or adoption." <u>Webster's Third New International Dictionary</u> 1819
(2002). Notably, the statute's passive syntax makes it somewhat ambiguous who
can make the proposal for joint trial. However, at least under these circumstances,
the essential question is whether the two groups of plaintiffs proposed a joint trial
of their claims in the state court.

As to who may make the proposal, the universe of possible subjects is
limited: the statute must be referring to a proposal made by the plaintiff, by the
defendant, or perhaps by the state court acting <u>sua sponte</u>. We leave open the
possibility that the state trial judge's <u>sua sponte</u> consolidation of 100 or more
persons' claims could satisfy the jurisdictional requirements of
§ 1332(d)(11)(B)(i). Since neither party has suggested that the state court ordered
or even raised the possibility of a joint trial, we have no occasion to, and do not
decide that question. Nor do either of the parties argue, nor could they, that the
defendant can be the one to propose joint trial in the state court. This much is
obvious from the structure of the exceptions to removal jurisdiction carved out by
CAFA, one of which expressly bars removal of suits where "the claims are joined
upon motion of a defendant." 28 U.S.C. § 1332(d)(11)(B)(ii)(II). Although

9

Carnival goes to great lengths to insist that this jurisdictional exclusion, by its own

terms, does not apply to the present case, the exclusion nonetheless matters

because it informs our interpretation of the preceding subparagraph that defines

"mass action." Since we know for sure that a mass action cannot be one joined on

the defendant's motion, it follows that the proposal must originate either with the

plaintiffs or, perhaps, with the state court.

At a minimum, what is clear from the statute's text and structure is that the

plaintiffs can propose a joint trial, either by naming 100 or more plaintiffs in a

single complaint or by their litigation conduct at any time prior to defendants'

removal of their action to federal court. If, for instance, plaintiffs initially file

multiple lawsuits but then, on the eve of trial, move to consolidate their cases, this

belated proposal would nonetheless fall within the plain meaning of

§ 1332(d)(11)(B)(i)'s "are proposed to be tried jointly" language.  Absent a

proposal or perhaps a <u>sua sponte</u> court determination, however, the federal courts

lack subject-matter jurisdiction over the plaintiffs' claims. In addition, no one

disputes that the burden of showing that plaintiffs proposed a joint trial rests with

the removing defendant.

Our reading of the statute is fully consonant with four longstanding

principles. First, we assess jurisdictional facts at the time of removal. <u>See</u> <u>Pretka v.</u>

<u>Kolter City Plaza II, Inc.</u>, 608 F.3d 744, 751 (11th Cir. 2010) ("A court's analysis

10

of [CAFA's] amount-in-controversy requirement focuses on how much is in

controversy at the time of removal, not later."); Sierminski v. Transouth Fin. Corp.,

216 F.3d 945, 946 (11th Cir. 2000). This principle, when read along with the

statutory language, necessarily means that the defendant cannot propose joint trial

because the proposal must be made in the state court prior to the defendant's

attempt to remove the case, and -- pursuant to § 1332(d)(11)(B)(ii)(II) -- the

defendant cannot move for consolidation in state court and subsequently take

advantage of federal removal jurisdiction. Second, as we have long recognized,

plaintiffs are "the master of the complaint" and are "free to avoid federal

jurisdiction," Hill v. BellSouth Telecomms., Inc., 364 F.3d 1308, 1314 (11th Cir.

2004), by structuring their case to fall short of a requirement of federal jurisdiction.

We permit this so long as the method of avoidance is not fraudulent. See, e.g.,

Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998) (fraudulent

joinder of defendants to defeat diversity jurisdiction). The plaintiffs in this case, as

the masters of the complaint, could choose (as they obviously did) a state forum

rather than a federal one so long as they were willing to undergo the inconvenience

of two separate trials. Third, the burden of establishing removal jurisdiction rests

with the defendant seeking removal. See Lowery, 483 F.3d at 1208 (CAFA did not

alter the "longstanding, near-canonical rule" that the burden of proving

jurisdictional requirements rests with the removing defendant (internal quotation

marks omitted)). Finally, when we evaluate whether the particular factual circumstances of a case give rise to removal jurisdiction, we "strictly construe[] the right to remove" and apply a general "presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001).

Based on the undisputed record, Carnival cannot demonstrate that the plaintiffs in the two actions proposed a joint trial of their claims, in whole or in part, in state court. What actually happened in the case is this: initially, six plaintiffs filed a complaint, Scimone I, and later amended that complaint to add thirty-three more plaintiffs.  Yet another sixty-five Costa Concordia passengers, who were potential additional plaintiffs, later indicated that they wanted to join Scimone I. At that point, rather than simply naming all 104 passengers to the complaint in Scimone I, the Scimone I plaintiffs voluntarily dismissed their lawsuit.  The thirty-nine Scimone I plaintiffs then split into two groups, divided the sixty-five other Costa Concordia passengers into those two groups, and filed two separate complaints in Florida state court. One complaint (Scimone II) named forty-eight plaintiffs, and the other complaint (Abeid-Saba) named the remaining fifty-six. Carnival then removed these two separate actions to federal court.

At no point in this procedural history did the 104 plaintiffs in these two actions ever file a single complaint that named 100 or more plaintiffs. Scimone I had thirty-nine plaintiffs, Scimone II had forty-eight, and Abeid-Saba had fifty-six. On the face of the complaint in Scimone I, therefore, the initial group of plaintiffs proposed to try only thirty-nine persons' claims jointly. The mere fact that another sixty-five Costa Concordia passengers wanted to join the action does not mean that the thirty-nine plaintiffs in Scimone I proposed or acquiesced to a joint trial with 100 or more persons. In fact, they obviously wanted, and took steps to ensure that they would get, separate trials with less than 100 persons involved. Thus, when the Scimone I plaintiffs realized that other Costa Corcordia passengers wanted to join, they, as masters of the Scimone I complaint, elected to voluntarily dismiss the complaint rather than aggregating 100 or more persons' claims. Carnival has not contested that the plaintiffs had the right to do so under Florida's rules of civil procedure. The plaintiffs then filed two separate lawsuits, Scimone II and Abeid-Saba, neither of which proposed to try 100 or more persons' claims jointly. Thus, nothing in how the plaintiffs structured their complaints amounted to a "proposal," as required by 28 U.S.C. § 1332(d)(11)(B)(i). Nor did plaintiffs' subsequent litigation conduct amount to a proposal to try 100 or more persons' claims jointly. Neither group of plaintiffs ever moved the state court to consolidate those two separate lawsuits or hold a joint trial on any component (e.g., liability) of the two

13

groups' claims. In short, nothing the plaintiffs did in state court, from the time that Scimone I was filed to the time Carnival removed the two actions to federal court, constituted a proposal for a joint trial on 100 or more persons' claims.

Carnival argues, nevertheless, that the plaintiffs in these two cases did in fact implicitly "propose" a joint trial. Indeed, this is the crux of Carnival's case. In essence, Carnival says that the plaintiffs proposed a joint trial simply by initially filing a single state-court action (containing only thirty-nine plaintiffs) and then voluntarily dismissing that case and re-filing two separate but largely identical lawsuits (each of which still had fewer than 100 plaintiffs). As Carnival puts it, "[a]t the very least, this conduct suggests a joint trial," which satisfies § 1332(d)(11)(B)(i); moreover, the division "essentially demands a joint trial," because some individual plaintiffs who traveled on the same ticket, or who belonged to the initial group of thirty-nine plaintiffs in Scimone I, are now split between Scimone II and Abeid-Saba. We are unpersuaded.

To begin with, the statutory language requires a "proposal," not a mere suggestion, and common sense dictates that, when plaintiffs choose to voluntarily dismiss a single complaint (which had fewer than 100 plaintiffs), then divide themselves into two separate groups, and file two separate complaints (each of which has fewer than 100 plaintiffs), they are actually proposing two separate trials rather than a joint trial. The fact that a plaintiff in Scimone II traveled on the same

14

ticket as a plaintiff in Abeid-Saba bears on whether the two cases share common

questions of law or fact, not on whether those plaintiffs proposed a joint trial of

100 or more persons' claims. Nor did the plaintiffs do anything at all that amounts

to a demand for a joint trial of 100 or more persons' claims. Every step the

plaintiffs took was plainly directed toward achieving the exact opposite. Indeed, if

we accepted Carnival's position, we would reduce the meaning of the word

"proposed" to nothing more than "contemplated the possibility of" or even

"consciously attempted to avoid." Yet we would hardly say that a mouse

"proposes" to be eaten by a cat when it makes the mistake of being seen by the cat,

recognizes the danger, and then quickly scurries away. This interpretation of the

word "proposed" would affect a substantial change to the statute as Congress wrote

it. The more natural reading of the provision is that the plaintiffs must actually

want, or at least intend to bring about, what they are proposing.

Every other court of appeals confronted with this question has come to the

same conclusion: that plaintiffs have the ability to avoid § 1332(d)(11)(B)(i)

jurisdiction by filing separate complaints naming less than 100 plaintiffs and by

not moving for or otherwise proposing joint trial in the state court. In Anderson v.

Bayer Corp., more than 100 plaintiffs, in what the Seventh Circuit described as

five "mostly identical complaints," sued Bayer in state court, all claiming that

Bayer's medication Trasylol injured them. 610 F.3d 390, 392 (7th Cir. 2010). None

15

of the cases standing alone involved more than 100 plaintiffs, but Bayer argued that the "plaintiffs c[ould] not avoid federal diversity jurisdiction [under § 1332(d)(11)(B)(i)] by carving their filings into five separate pleadings." Id. Much like we have done, the Seventh Circuit pointed out that 28 U.S.C. § 1332(d)(11)(B)(ii)(II) specifically excludes claims joined upon the defendant's motion. This exclusion informed the Seventh Circuit's interpretation of § 1332(d)(11)(B)(i) and implied that plaintiffs were able to avoid federal jurisdiction, since "Congress appears to have contemplated that some cases which could have been brought as a mass action would, because of the way in which the plaintiffs chose to structure their claims, remain outside of CAFA's grant of jurisdiction." Id. at 393. And this conclusion was consistent with the general principle that plaintiffs, as masters of their complaints, ordinarily may choose to include or omit parties in order to obtain their desired forum. See id. The Seventh Circuit therefore interpreted the "[t]he mass action provision [to] give[] plaintiffs the choice to file separate actions that do not qualify for CAFA jurisdiction." Id. "Of course, subsequent action by the plaintiffs in state court might render these claims removable," but nothing in the plaintiffs' conduct in the state court had indicated the desire to try 100 or more persons' claims jointly. Id. at 394. Therefore, the Seventh Circuit concluded that there was "no federal jurisdiction under CAFA." Id.

Similarly, in Tanoh v. Dow Chemical Co., an earlier Ninth Circuit case cited by Anderson in support of its disposition, the defendants removed seven actions (each with fewer than 100 plaintiffs) to federal court pursuant to CAFA. 561 F.3d 945, 950-51 (9th Cir. 2009). All 664 plaintiffs in the seven actions alleged that Dow Chemical exposed them to toxic chemicals. Id. Like here, the defendants argued that the plaintiffs "sought to avoid federal jurisdiction by filing several separate state court actions in groups fewer than one hundred." Id. at 951 (internal quotation mark omitted). The Ninth Circuit concluded that, "[b]y its plain terms, [CAFA] does not apply to plaintiffs' claims in this case, as none of the seven state court actions involves the claims of one hundred or more plaintiffs, and neither the parties nor the trial court has proposed consolidating the actions for trial." Id. at 953. The Third Circuit has agreed with the Seventh and the Ninth Circuits, albeit in an unpublished opinion. Abrahamsen v. ConocoPhillips, Co., 503 F. App'x 157, 160 (3d Cir. 2012) (when 123 plaintiffs filed four separate complaints, none of which had 100 or more plaintiffs, "[t]he plain text of CAFA clearly preclude[d] jurisdiction" because "Plaintiffs did not propose to try their claims jointly").[1]

Carnival levels two abstract, policy-based objections to our conclusion and the decisions of those other circuits: first, that we have violated the basic principle

---

[1] As we have done, the Seventh and Ninth Circuits left open the possibility that a state court's sua sponte decision to conduct a joint trial on 100 or more persons' claims would suffice. See Anderson, 610 F.3d at 394 n.2; Tanoh, 561 F.3d at 956.

17

that "courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum," Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981) (internal quotation mark omitted); and, second, that we have ignored the purpose of the statute, which was to expand federal jurisdiction over class and mass actions and to facilitate their removal.  The problem with the first objection is that Carnival presupposes that which it first has to prove: that it is entitled to a federal forum for two complaints that, on their face, each involve less than 100 claims. Carnival is only entitled to a federal forum if the plaintiffs filed a single complaint in state court that involved 100 or more persons' claims or otherwise proposed a joint trial for multiple complaints that in the aggregate contain 100 or more plaintiffs. The problem with the second objection is that there is no indication that Congress's purpose in enacting CAFA was to strip plaintiffs of their ordinary role as masters of their complaint and allow defendants to treat separately filed actions as one action regardless of plaintiffs' choice. Contrary to Carnival's position, the jurisdictional exclusion of claims joined only on a defendant's motion speaks to precisely the opposite intent: to continue to repose in plaintiffs the ability to choose a state forum as long as they do not join 100 or more persons' claims. In fact, the primary purpose behind CAFA's amendments to 28 U.S.C. § 1332 was to eliminate the complete-diversity and individual-amount-in-controversy requirements that applied to all other diversity suits in favor of the more forgiving

18

requirements of minimal diversity and a $5 million total amount in controversy.

See S. Rep. No. 109-14, at 10 (2005) ("The current rules [i.e., complete diversity

and the $75,000 individual-amount-in-controversy requirement] governing federal

jurisdiction have the unintended consequence of keeping most class actions out of

federal court . . . ."). What the plaintiffs have done in this case does not defeat

Congress's intent to remove those impediments to federal adjudication of class

actions.

Nor are we persuaded by the authorities Carnival cites. The two cases upon

which it most heavily relies -- Standard Fire Insurance Co. v. Knowles, 133 S. Ct.

1345 (2013), and Freeman v. Blue Ridge Paper Products, Inc., 551 F.3d 405 (6th

Cir. 2008) -- dealt with different issues and not with the mass-action provision at

issue in this case. In Knowles, the question was whether the lead plaintiff in a

class-action lawsuit could avoid federal removal jurisdiction by stipulating prior to

class certification that he, and the class he sought to represent, would not seek

more than $5 million in damages. See 133 S. Ct. at 1347. The relevant statutory

provision provided that "to determine whether the amount in controversy exceeds

the sum or value of $5,000,000," the "claims of the individual class members shall

be aggregated." 28 U.S.C. § 1332(d)(6). The district court in Knowles aggregated

the class members' claims and found that the amount in controversy exceeded $5

million but nonetheless remanded on the basis of Knowles's stipulation. Knowles,

133 S. Ct. at 1348. The Supreme Court reversed because "[t]he stipulation

Knowles proffered to the District Court . . . does not speak for those he purports to

represent . . . . because a plaintiff who files a proposed class action cannot legally

bind members of the proposed class before the class is certified." Id. at 1348-49. In

light of the nonbinding nature of Knowles's stipulation, the Supreme Court

concluded that § 1332(d)(6) obligated a district court to determine whether it had

jurisdiction based on its own calculation of the aggregate amount in controversy.

Id. at 1350.

The holding of Knowles, which concerns a different section of the statute,

plainly does not address the issue presented in this case. Carnival nevertheless

places great significance on the part of the opinion that states:

> To hold [that plaintiff's stipulation determined the bounds of federal
> jurisdiction] would, for CAFA jurisdictional purposes, treat a
> nonbinding stipulation as if it were binding, exalt form over
> substance, and run directly counter to CAFA's primary objective:
> ensuring Federal court consideration of interstate cases of national
> importance. It would also have the effect of allowing the subdivision
> of a $100 million action into 21 just-below-$5-million state-court
> actions simply by including nonbinding stipulations; such an outcome
> would squarely conflict with the statute's objective.

Id. (internal quotation marks and citation omitted).  Carnival urges us to read this

passage as stating a broad rule that CAFA does not allow plaintiffs to structure

their lawsuits to avoid CAFA jurisdiction. As we see it, this stretches the Supreme

Court's analysis far past its breaking point. The passage pertains to the amount-in-

controversy requirement and to the unique situation where a lead plaintiff merely

creates the appearance of a smaller amount in controversy with a nonbinding

stipulation to that effect. It cannot be read to suggest that all sections of CAFA

strip plaintiffs of their traditional role as masters of their complaint, particularly

where, as in this case, the plaintiffs' decision to proceed in two separate lawsuits

does not merely create the appearance of two trials but would actually result in two

trials in state court.

Freeman, Carnival's Sixth Circuit authority, also dealt with CAFA's

amount-in-controversy requirement. In that case, the same class brought the same

claim in five different actions, divided only by artificial time limits that ensured

that each action putatively fell under the $5 million amount-in-controversy

threshold of 28 U.S.C. § 1332(d)(2). Freeman, 551 F.3d at 406. Freeman held that

all five actions nonetheless collectively fell within CAFA's jurisdiction, and that

plaintiffs could not artificially structure their class-action lawsuits to avoid the $5

million amount-in-controversy requirement. Id. at 407. Both Knowles and

Freeman, which concerned class actions rather than mass actions, never had

occasion to interpret the "are proposed to be tried jointly" language of

§ 1332(d)(11)(B)(i) or its interaction with the jurisdictional exclusion of

§ 1332(d)(11)(B)(ii)(II) -- which together make clear that plaintiffs retain the

ability to avoid federal jurisdiction simply by not proposing joint trial of 100 or

more persons' claims. To put it another way, this case deals with a precondition to even treating the plaintiffs' two separate lawsuits as a class action in the first place, whereas <u>Freeman</u> and <u>Knowles</u> dealt with whether a class action or group of class actions satisfied § 1332(d)'s amount-in-controversy requirement for federal jurisdiction -- two very different questions.

The long and short of this case is that, in order for the district court to have subject-matter jurisdiction, 28 U.S.C. § 1332(d)(11)(B)(i) requires a proposal for joint trial of 100 or more persons' claims. But the forty-eight plaintiffs in <u>Scimone II</u> and the fifty-six plaintiffs in <u>Abeid-Saba</u> never filed a single complaint naming 100 or more plaintiffs and never moved for consolidation or a joint trial on part or all of their two separate actions. In other words, they never proposed joint trial of 100 or more persons' claims. In the face of the letter of the statute, the district court's remand order was proper.

AFFIRMED.